We have one case on the calendar this morning. Lionworks Patents v. Samsung Electronics, 2019-13-08, Ms. Richards. Yes, Your Honor. We understand you want to save ten minutes for rebuttal. Yes, thank you. Well, you can stop whenever you wish. Thank you. Please proceed. Thank you. Ms. Richards? Starting with the claim term, camera unit in the 078 Patent, the district court's claim construction order committed what this court has called one of the cardinal sins of patent law, reading limitations from the written description into the claims. Instead, as this court has enunciated many times, the name of the game is the claim. To determine the scope of the invention, the claim must be consulted first. The claim is the most important evidence of the scope of the invention. Doesn't the patent tell us what camera unit means? Column 2, figure 5 shows a block diagram of the camera unit. Thank you, Your Honor. We look at figure 5 and the question is the battery, right? The battery is inside the camera unit. Well, that's certainly one of the questions, but in the portion of the specification you reference at column 4, line 23, it begins, in principle, which as I understand the idiom means without regard for the specific details, and then it says, by example, the camera card consists of, and then it enumerates the elements in that example. But this court has long held that even if that were the only embodiment disclosed in the specification, that doesn't limit the claims. And the claims here, for example, claim 1 specifically defines camera unit and what it is comprising to have five elements. So under the Liebel case and the Kara Technologies case, even if figure 5 were the only example in the specification, that still wouldn't limit the claims. Do you agree that in column 4, line 26, it talks about the camera arrangement, which is the same as the camera unit, right? Well, in the… Is the camera arrangement the same as the camera unit? I don't think that that is perfectly clear, but in the portion you reference, it says the camera card. Now, it's a little bit ambiguous because the sentence… Okay, but assuming that camera arrangement and camera unit are the same, it says camera arrangement, which comprises camera and optics, image processing unit, battery, and interface. So, this is telling us that the camera arrangement or camera unit includes those things, right? In that example, it includes those things. So, you mean camera unit has different meanings in different places? Yes, we believe that camera unit is not… Camera is a term that everyone in the art would understand. But camera unit is not a term of art. And so, there's an example of what a camera unit is in the portion of the spec that you reference and in figure 5. But the claims specifically define camera unit to have certain elements. And those elements are different than the example in the specification. This isn't a case like the cases that Samsung cites, where the patentee has repeatedly and repeatedly said, this is the invention. This isn't an invention about a camera unit and having special items. That's not what the invention is about. And it's not like those cases. This is like the other cases where there is that example in the spec, and there's also the example in the abstract that doesn't have those elements. And then the claims specifically define what a camera unit is. So, as I read this patent, why don't you start with figure 1 and 2 for me, just to make sure that I understand, which I think I do, the technology disclosed herein. So, if you look at figure 1 with me, that is a disclosure of a camera unit contained within an integrated within a cell phone, correct? Yes, Your Honor. And figure 1 on the bottom, or what is figure 2 actually? Figure 2 is a camera unit contained on a removable camera card. These are two discrete and different embodiments disclosed throughout the spec. Yes. And there are different claims that are clearly directed to each of those two different embodiments. Is that also true? I can walk through with you, because I've already done it, and I can tell you which independent claims are directed to each one, if you'd like. But I personally see different claims, some of which clearly are directed to a removable camera card, and others of which expressly state that part of a camera unit is integrated into the housing. So, it seems to me that some claims are to one embodiment, and others are to the others. Yes, Your Honor. I agree with that. And I had the sense, as I read the claims at issue, which I understand to be 136 and not the removable camera card version. Yes, Your Honor. Okay. So, is it possible that a camera card could require a battery? Because actually, the camera card is listed as only generally having what you call in the patent volatile memory, what I would call RAM. And so, it has to have a battery. Because if you pull the card out, what's going to happen if there's no battery in the RAM? Yes, Your Honor. And that's exactly what's discussed at the bottom of Column 4 and the top of Column 5. Correct. It expressly tells you that without that backup battery on a camera card embodiment, what happens to the pictures? They go away. Yeah, right. They're stored in short-term memory. So, when it's disconnected from the battery, the pictures evaporate. Yes, in the camera card embodiment, which is not what these claims are. And it also said that in a camera unit, you could have a backup battery. Yes. But it's not really necessary because the unit isn't removable. It's within the housing and the phone itself has a battery. Correct? Exactly. Consistent with comprising. And the Column 4 to Column 5 language actually says that. It says the backup battery is necessary for the card or you'll lose the pictures. And then it says in the integrated embodiment, you could have a backup battery. Yes. I agree, Your Honor. Okay. Any further questions about camera unit or shall I move on? Thank you. I'd like to talk next about the means for interpreting the received voice commands in the 239 patent. In the 239 patent, the claim terminology doesn't appear in the specifications. The means for interpreting, the means for selecting. Why is there something in the Hiss prosecution history that explains to us why the claims use different language than the specification? Your Honor, you're correct. The word interpreting literally does not appear in the 239s. The means for selecting also doesn't appear, right? Correct. But performing the context specific inquiry that this court has previously ordered, you can tell what the means are. It may be so, but I'm just asking why it's an odd situation where we have these two claim limitations which are not referenced using the same language in the specification. That's kind of odd. Why did that happen? Do you know? I do not know. And it may well be because this patent is from Nokia and it may have been originally written in another language. I don't have an explanation as to why the exact same words were not used. But I will say that if you perform the context specific inquiry, you can tell that they do match up. And you're correct, it is a little bit more difficult than normal because those words are not used, but one of ordinary skill in the art could match it up. I think everybody here today, including the district court judge, which is not here today, would agree that figure 3 and the portions of column 5 and 6 do disclose some algorithms. The question is, are they the right algorithms? Well, the question is whether they're the algorithms that relate to the means for selecting. And when the district court construed means for selecting, the structure that appears in column 5, which you rely on for the means for interpreting, was attributed to the means for selecting. So you haven't appealed that point of construction with respect to means for selecting. How can it be that if that structure is structure for means for selecting, that it can be the structure for the means for interpreting? Well, it's not the same structure for both terms, but those structures are disclosed in the same portions of the specification. I think that can be seen most clearly with regard to figure 3. So the means for selecting uses the result of the means for interpreting. In this patent, interpreting means comparing. And what you're comparing is the spoken identifier to the stored sub-identifier. So if you look at figure 3, 302 relates to the means for receiving the sub-identifier in the claim. And then at 303, the comparing begins. This is the calculating of the probability. And the means for interpreting structure is from 303 to 306, because in this patent, interpreting means comparing. And then the means for selecting starts at 307. So no doubt they're integrally related, and they're discussed in the same areas of the patent in figure 3 and columns 5 and 6. But there are distinct steps with distinct structures. And I think that can be seen more clearly if we just back up a little bit. Figure 1 discloses this voice control unit at item 2, and the voice control unit has many sub-parts. And part of, I think, what's creating confusion is that Irowerks Construction specifically identified which sub-parts are involved in the means for interpreting. If you look at item 2, all of the items in the voice control unit are hardware, except for the voice recognition means. Sometimes it's called the speech recognition means. Sometimes it's called the voice recognition means. In our construction, it's called the voice recognition circuitry and programming. All those are the same thing. But to Your Honor's point, if you look at the re-exam file that's in the appendix at 3337. In terms of column 5, where you say it provides instruction, which part of column 5 is the selecting means, and which part is the means for interpreting? And the first line, it says, moves to a choose telephone number mode. Is that the means for selecting? No, that is a strangely worded name for the overall mode. The means for interpreting starts at 5, 9. The voice control unit calculates the probability. And then, let me just take a look and see where the means for selecting start. So, the interpreting is the comparing, and then the selecting is after that. The means for selecting starts at 5. There's one word on 15, after the probability has been created. So, after the comparison, then the phone makes the selecting. That's the means for selecting. So, you compare. Which lines? I'm saying that the means for interpreting starts at 5, 9, and goes until 5, 15, and then the means for selecting goes from 5, 15, I suppose, through 25 or 26 in that column. Right, but what I was saying earlier is that the district court in interpreting means for was structured for the means for selecting. You didn't appeal that or dispute that. If that's the structure for the means for selecting, it can't be the structure for the means for interpreting. Why not? Why can't it be the structure for means for interpreting? Isn't it the case in electrical systems that the same software can perform multiple functions? Doesn't it happen actually all the time? Can't the same algorithm achieve two different parts? Yes. Isn't that a pretty regular occurrence? Yes, Your Honor, and it's related software. First, so you have your phone and you say the identifiers. You say, I want to call Judge Moore, and so it tries to compare. Is she saying Moore or is she saying Lori? And then, based on which one it thinks I'm saying, based on that comparison, then it selects. So, they're integrally related, and they're both disclosed. And even if the judge possibly erred in the means for selecting by over-including a portion of the algorithm that really goes to the means for interpreting and means for selecting, neither party appealed that, and that's not at issue in front of us, right? Correct, Your Honor. The only thing that you all both briefed and appealed to us is, is there an algorithm and a corresponding structure for a means for interpreting? Yes, exactly, Your Honor. So, in the appendix at 3337, this is part of the re-exam prosecution history, it talks about the voice recognition means comparing the received identifier and the stored identifier. Everybody agrees that it's the voice recognition means that performs the interpreting. It's all throughout Samsung's brief. They use the two interchangeably. It's talked about in the re-exam that way. And the only view of the person of ordinary skill in the art valiant also says it and treats it that way. The question, really, in finding the algorithm is, what does the voice recognition means do? And I think it all comes down to what's in 532. It talks about the comparison made by the voice recognition means. Counsel, as you see, it's not so easy to save 10 minutes. Your time is just about exhausted, but we'll give you two minutes for rebuttal. Thank you, Your Honor. Thank you, Your Honor. Good morning. May it please the Court. Let me address the 078 camera unit issue first, and then I'll turn to the 239 patent, if that's okay. The camera unit, as counsel conceded, is not a term of art. It has no plain and ordinary meaning, so the analysis is proper to look to the specification as the District Court properly did and looked at the entirety of the specification and concluded that the camera unit does, in fact, as the specification tells us, conform to the components in Figure 4, conform to the structure in, I mean, Figure 5, pardon me. Figure 5 shows a representation of the camera unit. In Column 2, as you point out, it states Figure 5 shows a block diagram of the camera unit. On the other hand, when I look at Column 4, it refers to camera unit 14. And when I look at Figure 5, 14's A, B, and C are dotted lines that don't include the battery. What's the answer to that?  It doesn't include the battery. It does include the battery, because if we go back to Figure 1 and 2, there are, as Judge Moore correctly pointed out, there's two, really two embodiments of this camera unit that include the same components. The camera unit's integrated into the device in Figure 1, and the camera unit's arranged in a card in Figure 2. And in all instances, the camera unit includes the components shown in Figure 5. And how do we know that? Figure 1 says the device is implemented by means of an integrated camera unit. Figure 2 says it's implemented by means of a camera unit arranged in a card. And then both embodiments point to Figure 5 as the block diagram of the camera unit. There's one camera unit that includes the same components. And the reason we know that is in Column 3. But the problem is, nowhere in this spec does it say the battery is part of that camera unit. It says the battery is on the camera card, and then maybe there's some confusing language about a camera arrangement that I don't totally understand. But throughout the entire spec, camera unit is always number 14. And there's an A, a B, and a C. Sometimes there's an O. I figured out that's a typo. It's not 14-0. It's actually number 140. It's in the drawings. But there are always three components. You know, it's the norm in patent drafting that when you identify something by its number, and if it has A, Bs, and Cs, those are all within it. But other things that have a separate number are not necessarily within it, unless there's a dotted line thing that encapsulates them or something. We don't have any of that here. Understood, Your Honor. There's some ambiguity here, and that's why we need to look at the entirety of the specification. And it's a fair question, but let me give the Court some comfort on that. And I think Your Honor even pointed to this language regarding the battery in Column 4, Lines 43 through 47. It says the battery is mainly used to ensure that images are maintained in volatile memory in the card. Okay, so it's used to ensure that in the card. The battery is part of the card. And then it says it can also be used for the same purpose in the camera unit integrated into the notebook. It can be. Yes. It can be. Like it's optional. The way I read it is nothing suggests that the battery there is optional. It could perform other purposes. For example, it powers the camera itself, or it powers the microprocessor. It does other functions. There's nothing that suggests that anywhere in this patent. This is a truth. Your attorney made up argument right now on the spot. It's not anywhere in here, and nor did you make that argument to us or below at any point in time. Understood, Your Honor. And then on the next column, Column 5, Lines 3 through 6, it says by virtue of Battery 21, the operation of microprocessor and the memory unit, so forth, is, quote, assured in all circumstances. In a camera card. That entire paragraph is about the camera card embodiment. Look at Line 65, the topic sentence, and, you know, grammar says all sentences in a paragraph follow the topic sentence. It says this is about the camera card embodiment, which is Number 15. Understood. But if we look back to, if we look, it says all circumstances in that sentence. Here's another thing. Aren't the claims in this case, with the exception of the reexam, the originally filed claims? They are. And aren't claims part of the spec? They are. And so when you read a spec to ascertain what claim terms mean, and in this case where you have claim terms that actually define the camera unit, and they were part of the originally filed spec, wouldn't a skilled artisan look at them as well as what's in the written description to assess the meaning of the term? Sure, Your Honor. They would certainly look, a person skilled in the art would look to the claims as part of the original spec. There's nothing wrong with that. Those claims simply add additional functions and configurations. It don't address what the camera unit structure is. They add things like a memory for retrieving image information and so forth like that. That adds additional specificity. But let me get back to this battery issue because I can see this is an issue. Where we go to column 4, lines 23 through 25, it says, in principle, the structure of both camera card 15 and camera unit 14 conforms to the block diagram in figure 5. That has no ambiguity in it. I'm sorry, where are you? I'm sorry. Column 4, lines 23 through 25, where it says the structure of both the camera card, so we're talking about the card unit, I mean the card embodiment, and camera unit 14, which is the integrated version, conforms to the block diagram shown in figure 5. And then it says by But it expressly tells you that the camera unit in block diagram number 5 is number 14. It doesn't say every single one of the things in block diagram 5 are part of the camera unit. In fact, the camera arrangement includes the battery and the interface and everything else. It doesn't, but it doesn't, I don't, I personally don't read that as saying camera unit 14 must contain all of the elements in figure 5. The clear statement that is stated there is that the structure of both conform to figure 5. And figure 5 includes the battery component within the box. Not the dotted line, but it's in there. And then the specification tells us that it can be used for the same purposes in the card. So is it your view, then, that the camera card, which is number 15, and the camera unit 14 are totally interchangeable and contain all of the same elements all the time? I believe that's a fair read of the specification. That would be odd, wouldn't it, to have two different words that appear in claims that, according to you, need to be given the exact same meaning when they're directed to two totally different embodiments. I believe that there's really one embodiment of the camera unit, and there's two embodiments of where it appears, the card and the integrated version. And in both of those versions, the same camera unit embodiment shown in figure 5 is included. Just out of curiosity, what do you think the dotted lines in figure 5 mean? They seem to be attempting to encapsulate some components, but not the battery, and to indicate those components represent a subset of the whole card. So what do you think those dotted lines mean? Well, it's interesting because it says that the camera arrangement, which you flagged, it says 140, but it is 14-0, right? So that's a typo, but the dotted lines are around those components with the exception of the battery. But the text says, by example, the card consists of the camera major. It's also with the exception of the interface as well. Neither the interface nor the battery are contained within the dotted line. Correct. And then what it says, though, even in that embodiment, it includes the camera arrangement plus the battery and interface. So the battery is included, in our view, in the camera unit itself. Unless there's other questions, let me briefly address the 239 patent, if I may. I'd like to address the means for interpreting just quickly. So this is a very straightforward issue in our view, that there's a complete absence of any algorithm here, and the specification does not disclose any aspect or any steps for interpreting voice commands. And Your Honor's pointed to and asked counsel about the lines that they're relying on in Column 5, and that is, you're correct, Your Honor, that that is dealing with the means for selecting. And while the same types of means can deal with different functions in electronics, we're dealing with the function here of interpreting a voice command. Not choosing the telephone number, but interpreting the voice command. And the lead-in to that section in Column 5, which appears at the bottom of Column 4, tells us that the voice commands have not been recognized or interpreted. It says, after the voice control unit has recognized the given command, and as the activation command of the choose name process, and then it goes forth into selecting the telephone number. So that tells us right there that the command, voice command, has already been interpreted and recognized, but there's no steps in the specification interpreting whether this is a, hey, store a number, call a number, or do something else with the phone. There's no steps in here regarding interpreting a voice command. And so aristocrat and other cases tell us that, in that instance, you can't backfill it with an expert declaration or the like. There's no basis for that, and the District Court properly held that indefinite. Now, quickly, on the means for storing, of course, the court doesn't need to get to the means for storing or means for selecting if it agrees that the interpreting means is indefinite and invalid. But I will say, on the means for storing, it's also a simple issue. We're dealing with a very specific function, and that function is the storing of sub-identifiers. That's not coextensive with a general-purpose machine, general-purpose computer, or microprocessor. We're talking about a function of storing sub-identifiers, which can be spoken or keyed in. It requires special programming. The CATS exception doesn't apply. Eon Holdings tells us that the CATS exception is narrow. That is correctly decided by the District Court, and the Column 4, Lines 19 through 54, which disclose those steps for storing, line up perfectly with the function recited in the claim, which is storing sub-identifiers. And so all I will say, then, with respect to the means for selecting is the District Court conducted a proper analysis, 112.6, identified the function recited in the claim, and then looked to the specification as to the structure that corresponds to performing that function. And there's no need to append the word equivalence to the structure that corresponds to that. There's numerous cases that don't do that. We've cited them in our briefs. Can you go back to the means for interpreting? Sure. I'm struggling to understand your argument about why the algorithm disclosed in Column 5, Lines 9 through 16, isn't actually an algorithm for a means for interpreting voice commands. Sure, Your Honor. Basically what that is talking about there is the voice control unit calculates the probability between the first stored identifier and the pronounced identifier. Right. So it's trying to identify a voice command. That's the pronounced identifier is a voice command. Somebody pronounces a word, and it's trying to see if that word corresponds to something it has in memory. I don't believe that's what it says. What it's saying is in counsel's example, we've entered this mode. What do you think a pronounced identifier is? It's a pronounced identifier. We're talking about a very specific function. It's a word that you speak out loud, correct? Yes, but it's not a voice command. It's not a command in the context of this patent, in the background of the invention. I just want to get this straight. You've got a telephone which is trying to interpret voice commands, but when they say a pronounced identifier, you think it's not a voice command? No, because think about it. The phone is telling you to pronounce the identifier. You're not commanding the phone, hey, I want to enter a mode to make a call or store a number. That's the command. You have to put the phone or the device into some kind of mode to store a number, make a call. This is part of the algorithm that you pointed to, is taking the steps to figure out, I want to now call Judge Moore. I've already gotten the voice command, and the phone says… I don't follow you. A pronounced identifier seems to me to be the voice command, and then the next sentence says, subsequently it's examined whether any other identifiers are stored in memory. So then it's taking that voice command and comparing it to what's in memory in order to see what it should do with it. In your hypothetical, Your Honor, you're not giving… It's not hypothetical. I'm reading the language in the spec. That's not actually hypothetical. You're not giving the phone a command to do anything. That's already happened. So why would you be talking to a phone if not giving it a command? Do you think there's someone on the other line? Do you think that when they say pronounced identifier, they're having a conversation with somebody through the phone? The specification and the claims are very clear. We have to look at the function recited in the claim. And the lead-in to that… The lead-in for interpreting the received voice command. This is talking about a pronounced identifier and then taking that and comparing it to what's in memory to see if it matches up to anything so that it can then instruct the phone what to do with it once it has figured that out. Nowhere in this record does the word identifier get equated with command. Nowhere. It's not in the specification. What do you think a pronounced… I don't understand what a pronounced identifier is if not a voice command. This isn't actually complicated. This is not hard. Agree. The phone is asking me to pronounce the identifier. I'm not commanding the phone to dial a number. That step has already happened. The specification is clear on that. It's, again, at bottom of column 4, lines 66 and 67. Before we get into the sub-identifier issue and pronouncing identifiers, it clearly states the voice control unit has already recognized the command. It's already interpreted the command, but there are no steps set forth, no steps at all describing, for example, I want to command the phone to store a number versus make a call. There are no steps where the phone is deciphering that I've commanded it to store versus make a call. None of that's there. There's a complete absence of an algorithm here. It's very similar to aristocrat. You can't have the expert come in and interpret this and now say sub-identifiers is a command and twist it, Your Honor, respectfully. So with that, my time is up. Unless there are further questions, I will yield. Thank you, Counsel. Ms. Richards has two minutes for rebuttal. Thank you, Your Honor. I'd like to spend some more time on the means for interpreting in the 239, just backing up a step from what my colleague from Samsung said. Samsung bears the burden of showing that this claim because of this term is indefinite. It's their burden, and they have to prove it by clear and convincing evidence. It's clear from everything in the record, including the re-exam file history, the specification, and the only view of anyone of skill in the art, that interpreting means this comparison in this patent, and it's done by this voice recognition means. And at Column 5, the patent explains what the voice recognition means does, step by step, in an algorithm. He just spent a lot of time talking about voice commands and how Column 5 is talking about interpreting voice commands and not sub-identifiers, and I don't understand what that could mean because at Column 5, line 6, it says, the user can pronounce the sub-identifiers in any order. And then skipping ahead down to 5.9, it says, the voice control unit calculates the probability that what you're saying matches what's in the database. And it does use the word voice control unit, but the patent makes clear that the specific part of the voice control unit that's doing that probability is the voice recognition means, or in our construction, the voice recognition circuitry and programming. And then if you look at, we haven't talked much about Column 6, but if you look at Column 6, lines 9 through 11, let me just make sure I said those lines right. Yeah, after the mathematical equation, there's a sentence that begins, the voice control unit, too, defines the probability to all the sub-identifier compositions. Here comes the key part. And the sub-identifier composition, which is given the highest probability, is the final result of the recognition. The district court took the further step of adding voice recognition in there, signaling that it understood that the result of the comparison, what the voice recognition unit does is the comparison. Where the district court got confused, I think, is in the fact that the voice recognition means is just a sub-part of the voice control unit. He said, well, there are algorithms here that relate to the voice control unit, but it's not clear to me, the district court, that they relate to the voice recognition means. But if you look at those portions of the spec, 5 at 32, 6 at 9 through 11, and then it also points the court to 5 at 18 through 20, it says it can be assumed that the identifier is the correct one. So you can see, again, the result of what the voice recognition means does is it performs the comparison, which can then be used in the means for selecting the telephone number. Thank you, counsel. The case is submitted. All rise. The Honorable Court is adjourned from day today.